Argued December 16, 1975, affirmed March 15, reconsideration denied
April 21, petition for review denied May 11, 1976

## STATE OF OREGON, *Respondent,*
### *v.*
## EDWARD DEAN RILEY, *Appellant.*
### (Nos. 74-5741, 74-5742, 74-5743, CA 4861)

546 P2d 1097

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Lee, Judges.

LEE, J.

**LEE, J.**

Defendant appeals his convictions of forgery in the first degree, ORS 165.013,[1] (two counts) and criminal possession of a forged instrument in the first degree, ORS 165.022.[2]

Police had been keeping the house of a Ms. Wilson under surveillance. While doing so on November 16, 1974, they observed three people come from the house and depart by automobile. The three persons were Ms. Wilson, a Mr. Holmes and defendant. Together the three drove to a shopping center.

At the shopping center, Holmes and the defendant entered the mall and Wilson went into a J. C. Penney store. About 10 minutes later, defendant and Holmes returned to the car and were later rejoined by Ms. Wilson who drove the car, with Holmes and defendant in it, to the rear of the J. C. Penney store and then to the K-Mart shopping complex where the trio entered the K-Mart store.

About 10 minutes later defendant and Holmes

---

[1] ORS 165.013 provides:

"(1) A person commits the crime of forgery in the first degree if he violates ORS 165.007 and the written instrument is or purports to be any of the following:

"(a) Part of an issue of money, securities, postage or revenue stamps, or other valuable instruments issued by a government or governmental agency; or

"(b) Part of an issue of stock, bonds or other instruments representing interests in or claims against any property or person; or

"(c) A deed, will, codicil, contract, assignment, commercial instrument or other document which does or may evidence, create, transfer, alter, terminate, or otherwise affect a legal right, interest, obligation or status; or

"(d) A public record.

"(2) Forgery in the first degree is a Class C felony."

[2] ORS 165.022 provides:

"(1) A person commits the crime of criminal possession of a *forged instrument* in the first degree if, *knowing* it to be *forged* and with *intent to utter* same, he possesses a *forged instrument* of the kind specified in ORS 165.013.

"(2) Criminal possession of a *forged instrument* in the first degree is a Class C felony." (Emphasis supplied.)

came out of K-Mart and looked toward the front of the store. About 15 minutes later they reentered K-Mart. During this period defendant was observed coming out of the Baza'r food section of K-Mart with a paper sack in his hand. He placed the sack in a second car in the parking lot. Defendant then went into Baza'r again and later departed with Wilson.

A check was accepted by the J. C. Penney store on November 16, 1974 for the purchase of a stereo. The check was received from a woman.

A second check was accepted by Baza'r in payment for groceries on November 16, 1974. The check was received from a woman.

A third check was found uncashed in Wilson's car.

All of the aforementioned checks were: (1) made out to a "Pamela J. Holmes" (except one which was made out to "Pamela J. Homes"); (2) printed with the business name of "Bourland Printing" and its address; (3) signed with the name "James Bourland"; (4) dated November 15, 1974 (except one which was dated November 15, 1973); (5) written and signed by the defendant (according to the state's handwriting experts); and (6) unendorsed. Elton Bourland, the owner of Bourland Printing, testified that the aforementioned check forms were stolen and that no one had permission to sign the name "James Bourland" to them. However, his brother, Harold Bourland, was authorized to sign checks in his absence.

Prior to trial, the court ordered defendant to give a handwriting exemplar. He at first refused and later complied.

Defendant's first assignment of error is that the trial court erred in denying defendant's motion for acquittal. Defendant presents four arguments in support of this assignment.

*First,* defendant contends that the checks were not

"commercial instruments," within the meaning of ORS 165.013, which states in part:

> "A person commits the crime of forgery in the first degree if he violates ORS 165.007 and the written instrument is or purports to be any of the following:
>
> "* * * * *
>
> "(c) A deed, will, codicil, contract, assignment, *commercial instrument* or other document which does or may evidence, create, transfer, alter, terminate, or otherwise affect a legal right, interest, obligation or status * * *.
>
> "* * * * *." (Emphasis supplied.)

The indictments stated that the defendant "with intent to injure and defraud, did knowingly and unlawfully utter as true and genuine * * * a forged commercial instrument * * *" and that defendant "did * * * knowingly possess with intent to utter a forged commercial instrument * * *."

■ The defendant cites *State v. Leaton,* 3 Or App 475, 474 P2d 768 (1970), for the proposition that checks not endorsed cannot be "commercial instruments." *Leaton,* however, was construing ORS 165.115 (1969)[3] rather than ORS 165.013 now before us. *Leaton* also concerned an indictment which specified a forged "bank check"—which could be considered a "negotiable instrument" under ORS 73.1040 (1969). The indictments in the instant case, however, did not specify a "check" or a "negotiable instrument" but rather, a "commercial instrument." The legislative history of ORS 165.013(1)(c) sheds no light on the intended meaning of the phrase "commercial instrument." We find no judicial construction of that phrase. We believe that the legislature intended that this phrase be at

---

[3] ORS 165.115 (*repealed* Oregon Laws 1971, ch 743, § 432, p 2002) provided:

"Any person who, with intent to injure or defraud anyone, knowingly utters, publishes, passes or tenders in payment as true and genuine, any false, altered, forged or counterfeited evidence of debt specified in ORS 165.110, or with such intent, knowingly utters or publishes as true or genuine any false, altered, forged or counterfeited record, writing, instrument or other matter specified in ORS 165.105, shall be punished upon conviction in the manner provided in ORS 165.105."

[ 669 ]

least as broad as the dictionary definition of "commercial paper" which is

> "paper used in business having a monetary or exchangeable value, such as bank checks, promissory notes, etc." Webster's New Twentieth Century Dictionary 364 (unabridged 2d ed 1964).

We find that each of the checks involved in the instant case comes within the purview of this definition and hence within the phrase "commercial instrument."

■ *Second,* defendant insists that there was no evidence proving that Harold Bourland did not give permission to defendant to sign the name "James Bourland" to the checks. Elton Bourland, however, testified that no one had authority to sign the checks in question. In addition, there is no evidence that Harold Bourland had authority to allow the defendant to sign the checks. Finally, there was no "James Bourland."

*Third,* defendant maintains that there is no evidence that the defendant had the control or the right to control the check found in the car because he did not own the car in which the check was found nor was he driving the car. From this, defendant reasons that the state failed to prove that he was ever in possession—actual or constructive—of the check. However, since the defendant arrived in the car in which the check was found and there was evidence that defendant had written on the check, the jury could reasonably infer that defendant had possessed it to "utter"[4] it and that defendant falsely made[5] the check.

---

[4] ORS 165.013, *see* n 1, supra.

ORS 165.007(1) provides:

> "(1) A person commits the crime of forgery in the second degree if, with intent to injure or defraud, he:
>
> "(a) Falsely makes, completes or alters a written instrument; or
>
> "(b) Utters a written instrument which he knows to be forged."

ORS 165.002(7) provides:

> "(7) To 'utter' means to issue, deliver, publish, circulate, disseminate, transfer or tender a written instrument or other object to another."

[5] ORS 165.013 and ORS 165.007(1), *see* n 4, supra.

*Fourth,* defendant asserts that there was insufficient evidence of wrongful intent. We find that there was sufficient evidence for the jury to find intent to injure or defraud[6] and to utter a forged instrument.

█ Defendant's second assignment of error is that the trial court erred in admitting testimony of the refusal of the defendant to give a handwriting exemplar the first time he was asked. Such testimony, however, was admissible to show the defendant's guilty knowledge.

Affirmed.

---

ORS 165.002(4) provides:

"(4) To 'falsely make' a written instrument means to make or draw a complete written instrument in its entirety, or an incomplete written instrument which purports to be an authentic creation of its ostensible maker, but which is not, either because the ostensible maker is fictitious or because, if real, he did not authorize the making or drawing thereof."

[6] ORS 165.013 and ORS 165.007(1), *see* n 4, supra.

ORS 165.022, *see* n 2, supra.

ORS 165.017 provides:

"(1) A person commits the crime of criminal possession of a forged instrument in the second degree if, knowing it to be forged and with intent to utter same, he possesses a forged instrument.

"(2) Criminal possession of a forged instrument in the second degree is a Class A misdemeanor."